# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE A. SANDERS JR.,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | Case No. CIV-13-907-HE |

## REPORT AND RECOMMENDATION

Plaintiff George A. Sanders Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. The Commissioner has answered and filed the administrative record (Doc. No. 14, hereinafter "R.__"). United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons discussed below, it is recommended that the Commissioner's decision be REVERSED and REMANDED.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on June 9, 2010, alleging a disability onset date of January 1, 2008, and seeking benefits on the basis of

hearing and speech deficiencies as well as back problems. R. 13, 215-25, 245-50. Following the initial administrative denials of his applications, and at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 8, 2011. R. 58-104, 105-18, 123-36. A supplemental hearing before the same ALJ was held on April 17, 2012. R. 32-57. The ALJ issued an unfavorable decision on June 29, 2012. R. 13-31.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920; R. 14-15. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2008. R. 15. At step two, the ALJ determined that Plaintiff has severe physical impairments of "learning disability/borderline intellectual functioning, hearing loss, and back disorder." R. 15. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 15-17.

The ALJ next determined Plaintiff's residual functional capacity ("RFC"):

[T]he claimant has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an 8-hour workday and can stand and walk for about 6 hours during an 8-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant is to avoid concentrated exposure to hazards such as unprotected heights and heavy machinery. The claimant is to avoid even moderate exposure to very loud noises. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but can have no contact with the general public. The claimant can perform work where oral communication is not an essential job function.

R. 18-24. Based on this RFC assessment, the ALJ determined at step four that Plaintiff was unable to perform his past relevant work as a janitor, due to that work's physical demands. R. 24-25.

At step five, the ALJ considered whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in light of Plaintiff's age, education, work experience, and RFC. R. 25-26. Taking into consideration the VE's testimony regarding the erosion to an unskilled, light-exertion occupational base that would be caused by the additional limitations found in the RFC, the ALJ concluded that Plaintiff could perform occupations offering a significant number of jobs in the national economy, including price marker, folding inserter machine operator, and laundry bagger. R. 25-26. On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from January 1, 2008, through the date of the decision. R. 26.

Plaintiff's request for review of this decision was denied on July 11, 2013. R. 1-7. Thus, the ALJ's determination stands as the Commissioner's final decision on Plaintiff's DIB and SSI applications. *See* 20 C.F.R. §§ 404.981, 416.1481. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff presents one primary claim of error, and two alternative claims of error, as grounds for reversal of the ALJ's decision. Plaintiff principally criticizes the ALJ's step-three determination that Plaintiff does not meet the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05(C) ("Listing 12.05C"). *See* Pl.'s Br. (Doc. No. 16) at 11-29; Pl.'s Reply Br. (Doc. No. 18) at 1-6.[1] Because the undersigned agrees and recommends remand on the basis that the ALJ's step-three finding is legally erroneous

---

[1] References to the parties' filings in this Court use the ECF pagination.

and not supported by substantial evidence, this Report and Recommendation does not address Plaintiff's alternative arguments, which "may be affected by the ALJ's treatment of this case on remand." *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (declining to reach claimant's step-five arguments when reversing and remanding at step three).

At step three, if a claimant can show that his or her impairment or impairments is equivalent to one of the "Listings" contained in the Federal Regulations, the claimant "is presumed to be disabled and entitled to benefits." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see Hinkle v. Apfel*, 132 F.3d 1349, 1353 (10th Cir. 1997). At issue here is Listing 12.05C. Differing in structure from other mental disorder Listings, "Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Under the Listing, if a claimant's impairment satisfies the diagnostic description (the "capsule definition") and any one of the four sets of severity criteria, the claimant is presumptively disabled. *See id.*; *Lax*, 489 F.3d at 1085. Thus, to establish disability under Listing 12.05C, Plaintiff must present evidence showing that he (a) meets Listing 12.05C's first prong, i.e., that he has been assigned a "valid verbal, performance, or full scale IQ of 60 through 70"; (b) meets Listing 12.05C's second prong, i.e., that he has "a physical or other mental impairment imposing an additional and significant work-related limitation of function"; and (c) meets Listing 12.05's diagnostic description of "[i]ntellectual disability," i.e., that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that

5

began "before age 22." *See* 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.05, 12.05(C); *Barnes v. Barnhart*, 116 F. App'x 934, 939 (10th Cir. 2004).

Through his attorney, Plaintiff argued throughout the application proceedings that he met the criteria to be found disabled under Listing 12.05C. *See* R. 19, 35, 56, 65, 491, 503. The ALJ rejected Plaintiff's argument, holding that "[t]he severity of the claimant's mental impairment(s) does not meet or medically equal the criteria of listing . . . 12.05":

> The "paragraph C" criteria of listing 12.05 are met where the claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant's full-scale IQ was 66 on testing on November 7, 2011, and he has significant hearing loss. However, the claimant's adaptive skills are so well developed that he lives alone, performs his own household chores, takes care of his pets, fixes his own meals, manages his personal finances, has a driver's license, drives alone, can pay for groceries, and has no problems getting along with family or neighbors. Thus, the evidence does not support an assertion that the claimant's impairments meet listing 12.05.

R. 16, 17 (citation omitted). In the course of his decision, the ALJ returned to the question of Listing 12.05C and described Plaintiff's "adaptation skills" *and* lack of a qualifying other impairment as negating a finding that Plaintiff met the criteria of the Listing. *See* R. 19, 20-21. As to the latter requirement, the ALJ stated:

> The second prong of section 12.05C requires that the claimant have "a physical or other mental impairment imposing additional and significant work-related limitation of function." The regulations do not define "significant," but courts have held that a "significant limitation" of function for purposes of section 12.05C . . . is one that has more than a slight or minimal effect on the claimant's ability to perform basic work. The second prong limitation "need not be disabling in and of itself." The claimant has not been wearing his hearing aids, but during examinations has evidently heard the examiner just fine. He is able to read lips very well and has been able to work at various jobs in spite of his hearing loss.

R. 20-21 (citations omitted).[2]

Thus, the ALJ's analysis includes a finding that Listing 12.05C's second prong was not met but appears to hang more heavily on the "adaptive functioning" concept found in the Listing 12.05 "capsule definition" (requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting" "before age 22"). *See* R. 16, 17, 19, 20-21; 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.05, 12.05(C). The fact that the ALJ's rationale for his step-three finding is not clear is, by itself, a sufficient basis for remanding this matter.[3] Moreover, the ALJ's step-three finding cannot be sustained whether predicated upon Listing 12.05C's second prong *or* Listing 12.05's capsule definition.

The second element or "prong" of the Listing 12.05C severity criteria—an additional and significant work-related limitation of function—may be established by

---

[2] The Commissioner concedes that Plaintiff meets the first-prong requirement of a valid IQ score of 60 through 70. *See* Def.'s Br. (Doc. No. 17) at 5. That concession is consistent with the ALJ's conclusion as quoted above and the record evidence. *See* R. at 17, 672.

[3] "Failure . . . to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks omitted); *see Clifton*, 79 F.3d at 1009 (holding that ALJ's "bare conclusion [was] beyond meaningful judicial review" and that ALJ was required to "explain why he found that [claimant] was not disabled at step three"); *Henderson v. Astrue*, 383 F. App'x 700, 702 (10th Cir. 2010) (reversing where ALJ failed to "explain why he reached his conclusion at step three" and ALJ's findings at steps four and five did not "conclusively negate" claimant's listing argument); *cf. Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (noting that ALJ's rejection of medical evidence is inadequate where the court must speculate as to the basis for rejection).

showing a severe impairment other than the low IQ score that satisfies prong one. *See* 20 C.F.R. pt. 404, subpt. P app. 1 § 12.00(A). The SSA has expressly stated that it equates a "severe" impairment at step two with an "additional and significant work-related limitation of function" at prong two of Listing 12.05C. *See id.*; 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found at step two that Plaintiff, in addition to his intellectual disability, suffered from two severe medically determinable physical impairments: hearing loss and back disorder. R. 15 (finding that these impairments "impose more than a minimal effect on the claimant's ability to perform basic work-related functions"). In so finding, the ALJ determined that these impairments "significantly limit[] [Plaintiff's physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). When assessing prong two of Listing 12.05C, however, the ALJ found that Plaintiff's hearing loss did not have "more than a slight or minimal effect" on Plaintiff's ability to work and did not discuss Plaintiff's back disorder. *See* R. 21. These findings, absent adequate justification, are incompatible and are contrary to Tenth Circuit authority. *See Hinkle*, 132 F.3d at 1352 & n.4 (holding that a decision as to whether 12.05C's second prong is met should "closely parallel" the step-two finding); *Barnes*, 116 F. App'x at 936 ("[T]his court has held that where an ALJ determines at step two that a claimant's impairment is severe, that impairment is a 'significant' limitation of work functions within the meaning of Listing 12.05(C)."). Indeed, the Commissioner concedes on appeal that prong two of the severity criteria is met in this case. *See* Def.'s Br. at 5.

Regarding the capsule definition of Listing 12.05, neither the ALJ's discussion nor the medical evidence on that point is sufficiently clear that the Court may undertake review without engaging in impermissible fact-finding and speculation. Listing 12.05's capsule definition requires a claimant to establish that he or she experiences "deficits in adaptive functioning," but SSA regulations do not provide express criteria to determine a qualifying type or degree of deficit. *See* 20 C.F.R. pt. 404, subpt. P app. 1 § 12.05. In 2002, the SSA stated that the capsule definition for Listing 12.05 is "consistent with, if not identical to, the definitions of [mental retardation] used by" "[t]he four major professional organizations in the United States that deal with [mental retardation]." *See* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018, 20,022 (Apr. 24, 2002).[4] The SSA further stated that its capsule definition "allow[s] use of any of the measurement methods recognized and endorsed by the professional organizations" in determining eligibility for disability benefits. *Id*.

The Tenth Circuit, in an unpublished decision, remanded a Listing 12.05C case where the ALJ had "essentially improvised his own definition for 'deficits in adaptive functioning.'" *Barnes*, 116 F. App'x at 942-43. The *Barnes* court directed that, upon remand, "the ALJ must choose a standard consistent with the Commissioner's directive,"

---

[4] On August 1, 2013, the SSA announced a final rule to replace the term "mental retardation" with "intellectual disability" in the Listings, including Listing 12.05. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,499 (Aug. 1, 2013). The change in terminology did not substantively alter the Listings. *See id.* at 46,501.

9

such as one of the definitions provided by the professional organizations. *Id*. at 942. Other courts, leaving undecided the question of whether one of the four organizations' definitions must be used, hold that for there to be meaningful review the ALJ must at least articulate the standard that was employed. *See*, *e.g.*, *Miller v. Astrue*, No. 4:07-cv-2611, 2008 WL 8053474, at *8 (S.D. Tex. Sept. 7, 2008) ("While the SSA endorsed the use of any of the four professional organizations' standards, it did not explicitly adopt any one of those standards, and is not entirely clear whether the SSA meant to limit the ALJ to the use of those standards alone. What is clear, however, is that some standard must be used in order for judicial review to be possible.").

The record contains evidence that Plaintiff suffers at least *some* amount of deficit in *some* areas of adaptive behavior.[5] *See* R. 72-75, 81 (Plaintiff testifying to difficulty maintaining concentration and pace during past work and being terminated from jobs for making mistakes), 83 (Plaintiff testifying to being "ripped off" and given "wrong change because I don't know how to pay"), 83-84 (Plaintiff testifying to receiving assistance from parents). The record also contains evidence that there are areas of adaptive behavior where Plaintiff does not suffer a deficit. *See* R. 82, 88 (Plaintiff testifying to lack of difficulty with activities of self-care and home living). Thus, this is a case where

---

[5] In discussing intellectual disability, the American Psychiatric Association states, "Deficits in adaptive functioning . . . refer to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and socioeconomic background." *Diagnostic and Statistical Manual of Mental Disorders* 37 (5th ed. 2013).

10

it matters what standard the ALJ used to determine whether Plaintiff met the Listing 12.05 requirement of "deficits in adaptive functioning." 20 C.F.R. pt. 404, subpt. P app. 1 § 12.05; *cf. Miller*, 2008 WL 8053474, at *4, *5 (discussing cases where a court found Listing 12.05C to be met where "the plaintiff's intellectual functioning was more consistent with borderline intellectual functioning than mental retardation"). Because the ALJ appeared to use an ad hoc rather than a medically accepted standard for that requirement, and did not articulate the standard that was used, this Court is left in the same position as in *Barnes*, which is persuasive here, and must remand on that basis. A court "can only review ALJ decisions that make specific findings on the facts of the case." *Peck v. Barnhart*, 214 F. App'x 730, 736 (10th Cir. 2006) (citing *Clifton*, 79 F.3d at 1009-10). "[I]f [Plaintiff] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *See id.* (rejecting Commissioner's argument that remand was not required because there was no evidence that plaintiff met the Listing 12.05 capsule definition).

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion. This case should be remanded to the Commissioner for further findings and determinations, including as to whether Plaintiff's mental impairment and his additional severe physical impairments satisfy the capsule definition of Listing 12.05 and the specific severity criteria of Listing

12.05C.  The undersigned takes no position on the merits of Plaintiff's disability claim, and "[no] particular result" upon remand is recommended.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993).  This recommendation is made only to ensure that the correct legal standards are followed in reaching a decision based on the facts of the case.  *See Angel v. Barnhart*, 329 F.3d 1208, 1214 (10th Cir. 2003).

### NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by March 11, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes all of issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 25th day of February, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE